[Civ. No. 36743. Second Dist., Div. Five. June 22, 1971.]

CRAIG GLASS, a Minor, etc., et al., Plaintiffs and Appellants, v. GLENDA BENKERT, as Administratrix, etc., Defendant and Respondent.

## COUNSEL

Elaine B. Fischel and Christen Brun Henrichsen for Plaintiffs and Appellants.

Wyman, Bautzer, Finell, Rothman & Kuchel and Charles L. Fonarow for Defendant and Respondent.

## OPINION

**REPPY, J.**—On June 14, 1968, a plane crash resulted in the death of one Milton Kenneth Glass, the father of minors Craig Glass, Shelly Glass, Keith Glass, Drew Glass and Alan Glass and the husband of Sally Elizabeth Glass, plaintiffs and appellants herein. Defendant administratrix's decedent, Alan B. Benkert, pilot of the plane, was killed in the same accident. His wife, Glenda Benkert, became the administratrix of his estate and caused notice to creditors to be published on four successive Fridays: August 30, 1968, September 6, 1968, September 13, 1968, and September 20, 1968. On September 20, 1968, an affidavit of due publication was filed.

On March 18, 1969, more than six months after the first date of publication, a creditor's claim was filed against the estate of Alan B. Benkert by plaintiffs.

On June 13, 1969, a complaint was filed by plaintiffs against the estate. A demurrer thereto was filed by the administratrix on the basis that plaintiffs' claim had been filed untimely. The demurrer was sustained by the court, and plaintiffs filed a first amended complaint. The demurrer was sustained, the trial court stating that "the filing of the affidavit of publication, even if untimely, has no effect on plaintiff's [*sic*] failure to file claims."

An order of dismissal was entered, from which this appeal is taken.

The demurrer was properly sustained on the ground that plaintiffs failed to file their claim against the estate within six months[1] after the first publication of notice to creditors. (Prob. Code, §§ 700, 707.)[2]

### I. Defendant's Affidavit of Publication was Effective.

Plaintiffs contend that their claim was not untimely filed because the affidavit of completion of publication was premature and, therefore, void. Section 700 provides that a notice to creditors of a decedent be published in a newspaper in the county where the probate of the estate is occurring. Section 701 provides: "Such notice must be published not less than once a week for four successive weeks. . . . Four weekly publications shall be sufficient publication of said notice. If said order is published in a daily newspaper, publication once a week for four successive weeks shall be sufficient."

Section 702 provided: "An affidavit showing due publication of the notice must be filed with the clerk within 30 days after the completion of the publication. The affidavit shall contain a copy of the notice and shall state the date of its first publication. Final distribution shall not be decreed unless it is shown that notice to creditors has been duly given. If the affidavit is not filed until after such 30-day period, the time to file or present claims shall be extended for a . . . [time] equal to the period of default in such filing, but not to exceed six[3] months from the date of such filing."

Plaintiffs first contend that section 701 required that the affidavit not be filed until 28 days after the first publication of notice. It is well settled that under a statute providing for publication once a week for a specified number of weeks, it is not necessary that that specific number of weeks intervene between the first and last publication. (*Foster* v. *Vehmeyer,* 133 Cal. 459, 460 [65 P. 974]; *Hanhart* v. *County of Madera,* 76 Cal.App. 290 [245 P. 444]; see also *Savings & Loan Society* v. *Thompson,* 32 Cal. 347.) It has been held, or implied, however, in a number of cases cited by plaintiffs that the period of notice must extend over the specified number of weeks, i.e., the event to occur at the end of publication cannot take place until the stated number of weeks have passed. However, in all of these cases, that event was the incident noticed in the publication and not the act of filing an affidavit of publication. (*County of Los Angeles* v. *Payne,* 82 Cal.App. 210 [255 P. 281] (notice of a hearing); *Savings & Loan Society* v. *Thomp-*

---

[1]After the dates material herein, the period was reduced to four months by amendment of Probate Code section 700. (Stats. 1968, ch. 81, p. 238, § 1.)

[2]Unless otherwise indicated, all statutory references are to the Probate Code.

[3]Amended by Statutes 1969, chapter 177, page 427, section 1 so as to change the period from six to four months.

son, *supra,* 32 Cal. 347; *Foster* v. *Vehmeyer, supra,* 133 Cal. 459; *Sacramento M. U. Dist.* v. *All Parties, etc.,* 6 Cal.2d 197, 203-204 [57 P.2d 506] (publication of summons, giving notice to a defendant to answer within certain period after publication); *Seccombe* v. *Roe,* 22 Cal.App. 139, 141-142 [133 P. 507]; and *Hotchkiss* v. *Darling,* 130 Cal.App. 625 [20 P.2d 343] (notice of sale under deed of trust); compare *People* ex rel. *Skelly* v. *City of Glendale,* 40 Cal.2d 732 [256 P.2d 20].) These courts were concerned that the person for whose benefit notice was being provided have full opportunity of receiving such notice before his rights were foreclosed. Here the deadline for filing creditors' claims dates, not from the end of the publication period or from the filing of the affidavit, but rather from the date of the first publication. The affidavit serves only to give notice to the court that publication has occurred and, by making the relevant information available in the court files, to give additional notice to creditors. (See *Hawkins* v. *Superior Court,* 165 Cal. 743 [134 P. 327].) Even if the notice period is technically 28 days, there is no conceivable benefit to creditors in a requirement that 28 days shall have passed before the filing of the affidavit. In fact, they benefit from an early filing.

Plaintiffs' next contention is based on this provision in section 702: "An affidavit *showing due publication* of the notice must be filed with the clerk *within 30 days after the completion of the publication.*" (Italics supplied.)

They argue that, even if publication was completed on the day of the last publication (September 20, the 20th day of publication), the affidavit was prematurely filed because it was filed on that same day. They contend that the time for filing the affidavit begins on the day after the completion of publication, relying on the rule that the correct method of computing time when a statute refers to a specified period after an event requires exclusion of the day on which the event occurs. (*City of Pleasanton* v. *Bryant,* 63 Cal. 2d 643, 646-647 [47 Cal.Rptr. 807, 408 P.2d 135]; *Ley* v. *Dominguez,* 212 Cal. 587, 593-594 [299 P. 713]; *Reichardt* v. *Reichardt,* 186 Cal.App. 2d 808 [9 Cal.Rptr. 225]; see Civ. Code, § 10; Code Civ. Proc., § 12; Gov. Code, § 6800.) This rule for counting time is correct and meaningful, but only as a method for setting the latest date for the filing of the affidavit.

It has been held that such language as "within 30 days after the completion of the publication" permits the doing of the required act at any time before the final day specified. (*Williamson* v. *Egan,* 209 Cal. 343, 348 [287 P. 503];[4] *French* v. *Powell,* 135 Cal. 636, 639-641 [68 P. 92].)

---

[4]In *Williamson,* the court stated (at p. 348): "We feel constrained to hold upon principle and authority that the language 'within ninety days following the expiration of the period' (for filing claims) means not beyond the ninetieth day after such period. It has been held that 'within ten days after service' of a commissioner's report, means before, or less than ten days after service [citation]; that a waiver 'at any time

■ "The term 'within' as defined in numerous cases . . . means 'not longer in time than' or 'not later than.' 'Within' does not fix the first point of time, but the limit beyond which action may not be taken." (*In re Keller*, 120 F.Supp. 274, 275.)

■ Other language of the statute or the very nature of the statute may fix the first point in time.[5] Section 702 does fix the first point in time. It requires that the affidavit show "due publication." Thus, the affidavit must report the last required publication and therefore cannot be filed until after that publication. Defendant's affidavit, reciting the last publication, was filed the same day as the last publication. Absent any showing to the contrary, it is to be assumed that the paper with the last notice in it was issued first. The affidavit could not have been any more helpful to plaintiffs if filed later.[6] Plaintiffs urge that statutes foreclosing creditor's claims must be strictly construed. However, by adopting the construction they propound, we would confer no benefit on creditors and would be rejecting common sense as an aid in statutory construction.

## II. *The Period of Limitations is not Tolled During Minority.*[7]

■ Section 707 provides in relevant part: "[A]ll claims for damages for . . . death of a person . . . must be filed or presented within the time limited in the notice or as extended by the provisions of Sections 702 and

---

within six months after the probate' of a will, includes a waiver made two months before probate [citation]; that a certificate filed before a vessel's departure is 'within four days from the time of the vessel's departure from port' [citation]; that a claim filed prior to a declaration of insolvency is filed 'within nine months after declaration of insolvency' [citation]; that 'within 30 days from the time such work is completed' means 'before completion, or not more than 30 days afterwards' [citations]."

[5]See *City of Los Angeles* v. *Cole*, 28 Cal.2d 509, 513 [170 P.2d 928] (the purported motion for new trial was premature under Code of Civil Procedure section 659 because there was no completed trial and decision and thus no party aggrieved); *Radar* v. *Rogers*, 49 Cal.2d 243, 249 [317 P.2d 17] (complaint filed before notice of rejection may have been premature under Probate Code section 714, but claim not barred because no substantial rights affected).

[6]Plaintiffs seem to assert possible prejudice on the theory that if an administrator dies after the final publication and filing of the affidavit but before the period of publication is complete, the time for filing claims somehow should be extended but that such an extension would be thwarted unless filing of the affidavit had to be after the expiration of the period. Apparently they have Probate Code section 701 in mind. We do not find support in the Probate Code for the proposition that an administrator's death during the period of time referred to should result in an extension of any sort. A conclusion that such is the law need not be drawn from the section 701 provision that "[i]f the . . . administrator dies . . . after the publication has been completed but before the time to file or present claims has expired, the time to file or present claims is not extended."

[7]We do not agree with defendant's contention that this argument was not raised on demurrer.

709 of this code; and *any claim* not so filed or presented is *barred forever. . . .*" (Italics supplied.) There is no express exception for minors. In *Artukovich* v. *Astendorf*, 21 Cal.2d 329 [131 P.2d 831], the Supreme Court, construing Political Code section 4075, acknowledged the Legislature's intent to balance the questions of public policy involved in each instance and held that where statutes make no exception for minors, none may be implied. (P. 334.) The court stated: "[N]o exception in favor of minors or persons laboring under other disabilities may be written into said section under the guise of judicial interpretation. . . . 'The solicitude of the law in protecting a minor in his contractual and other relationships is limited and not general in its application.' . . . [P]ractically every special consideration which has been extended to . . . [minors] is . . . covered by statute. Thus there are statutory provisions extending special consideration to minors with respect to the time within which certain proceedings must be commenced [citations], but the special consideration extended is expressly limited to the proceedings therein mentioned. We find no similar provisions extending special consideration to minors in statutes prescribing the time within which claims must be filed or the time within which proceedings must be commenced upon rejected claims either in probate proceedings [citation] or in liquidation proceedings." (Pp. 333-334.) In *Billups* v. *Tiernan*, 11 Cal.App.3d 372, 376-379 [90 Cal.Rptr. 246], it was held specifically that the section 707 limitation was not tolled by the minority disability provided for in Code of Civil Procedure section 352. (See also *Carpenter* v. *Eureka Casualty Co.*, 14 Cal.App.2d 533, 537 [58 P.2d 682]; *State Farm etc. Ins. Co.* v. *Superior Court*, 232 Cal.App.2d 808 [43 Cal.Rptr. 209] (following *Artukovich, supra,* and holding that minority did not extend the time for filing an uninsured motorist action under Ins. Code, § 11580.2).

III. *Requiring Minors to Present Claims During Minority or be Barred is not a Violation of Their Rights to Equal Protection of the Laws or Due Process as Provided by the Fourteenth Amendment of the United States Constitution.*

Plaintiffs argue that the minors' right of recovery was illusory because they were incapable of properly pursuing it. However, a minor's suit under the statute can be brought by his parents or guardian (general or ad litem). (See *Artukovich* v. *Astendorf, supra,* 21 Cal.2d 329, 335 [131 P.2d 831]; *Myers* v. *Stevenson,* 125 Cal.App.2d 399, 403 [270 P.2d 885].) The children's mother was appointed guardian ad litem (Code Civ. Proc., § 372) to pursue the instant action. There are strong policy reasons for the legislative decision not to toll the pertinent limitations period during minority which are exemplified in the instant case. The defendant's decedent died leaving heirs who must be provided for and an estate which must be

distributed. Tying up the estate for up to 21 years waiting for a minor claimant to reach majority would place a considerable hardship on the heirs. Also, the heirs could be forced to defend several separate actions, one as each minor claimant reached majority. Plaintiffs have failed to show a violation of their constitutional rights.

IV. *Plaintiffs Cannot Now Claim a Waiver of the Presentation of Their Claim.*

In *Satterfield* v. *Garmire*, 65 Cal.2d 638, 645 [55 Cal.Rptr. 102, 422 P.2d 990], it is stated: "[G]enerally it is not within the authority of an executor or administrator to waive formal presentation of a claim [because of the fiduciary capacity in which he acts]. But we conclude he may do so where this congeries of circumstances exists prior to the expiration of the period for filing a claim: he has knowledge of the claim and concedes its merit save only as to the specific sum; the estate is protected by insurance coverage exceeding the amount of the claim; and waiver results in relinquishment of no substantial benefit of or causes no detriment to the heirs or legatees."

Plaintiffs, relying on *Satterfield, supra,* say in their brief that they can prove that the administratrix knew of plaintiffs' claim, that she negotiated with other parties injured in the same transaction, that she unsuccessfully searched her files to find a formal claim, that she determined not to notify plaintiffs of its nonexistence, and that any recovery obtained by plaintiffs would be paid out of insurance.

Assuming that plaintiffs can prove what they now offer to prove, we note that the facts of this case differ substantially from *Satterfield.* Here, there were no negotiations or contacts between these parties and there was no concession of the merits of the claim on defendant's part.

In any event, plaintiffs cannot properly raise the issue for the first time on appeal because it was not raised below (*Sahagun* v. *Dickison,* 217 Cal.App. 2d 74, 75 [31 Cal.Rptr. 446]; *Estate of D'Avila,* 217 Cal.App.2d 123, 126-127 [31 Cal.Rptr. 363]), and the facts upon which they now seek to rely do not appear in the record. (*Weller* v. *Chavarria,* 233 Cal.App.2d 234, 246 [43 Cal.Rptr. 364]; *Knapp* v. *City of Newport Beach,* 186 Cal.App.2d 669, 679 [9 Cal.Rptr. 90].) There was no allegation in the complaint that defendant was guilty of any conduct which might constitute waiver.

Plaintiffs, citing *Loper* v. *Flynn,* 72 Cal.App.2d 619 [165 P.2d 256];

*King* v. *Mortimer,* 83 Cal.App.2d 153 [188 P.2d 502];[8] and 2 Witkin, California Procedure, Pleading, section 505, pages 1496-1497, contend that they can raise the issue now because the demurrer to the first amended complaint was sustained without leave to amend. However, defendant pointed out the existence of *Satterfield* in her points and authorities supporting the demurrer to the original complaint.[9] Plaintiffs do not suggest that they did not have sufficient knowledge of the facts of this case to make appropriate allegations in their first amended complaint, or that they would have asserted a *Satterfield* defense if given another chance to amend. Moreover the trial court was not given any inkling that a *Satterfield* defense might be asserted in another amended complaint.

The judgment is affirmed.

Stephens, Acting P. J., and Aiso, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 18, 1971.

---

[8]In these two cases, a demurrer was sustained to the first attempt to state a cause of action.

[9]"Recent decisions have recognized that the provisions of Probate Code section 707 may be waived if the representative of the estate is guilty of some kind of unusual conduct constituting waiver or estoppel. (*Satterfield* v. *Garmire,* 65 Cal.2d 638 [55 Cal.Rptr. 102, 422 P.2d 990].) But the complaint in the instant case alleges no basis whatsoever for a waiver or estoppel."